IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

# STATE OF TENNESSEE v. DAMION CARRICK

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-09360     W. Fred Axley, Trial Judge**

---

**No. w1998-00655-CCA-R3-CD - Decided May 16, 2000**

---

The defendant appeals his jury convictions of two counts of Especially Aggravated Robbery and his twenty-five year sentences. The evidence is sufficient to support a conviction, the photographic line up not unduly suggestive, and the length of sentence appropriate. However, the testimony concerning the defendant "being developed as a suspect" was improperly admitted, but the error harmless. Further, plain error requires merging the two convictions of Especially Aggravated Robbery into one conviction and modification of the defendant's sentence but not its length.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified**

WILLIAMS, J. delivered the opinion of the court, in which TIPTON and WITT, JJ. joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Damion Carrick.

Paul G. Summers, Attorney General & Reporter, Patricia C. Kussman, Assistant Attorney General, William L. Gibbons, District Attorney General, and Rosemary Sue Andrews, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

The defendant, Damion Carrick, appeals from his convictions by a Shelby County jury of two counts of Especially Aggravated Robbery, class A felonies. See Tenn. Code Ann. § 39-13-403. The defendant was sentenced, as a Range I offender, to the Department of Correction for twenty-five years on each count, these sentences to run concurrently. On this appeal, the defendant challenges his convictions and sentences on the following grounds:

(1) The trial court erred in denying the defendant's motion to suppress the photographic identification of the defendant on the basis of undue suggestiveness;
(2) The trial court erred in admitting certain testimony; and
(3) The trial court erred in imposing an excessive sentence.

After careful review of the briefs, the record and the applicable law, we find plain error in the judgment from the trial court. We find that the evidence does not support two separate counts of especially aggravated robbery; accordingly, we merge the two counts into one count of especially

aggravated robbery and modify the sentence imposed. In all other respects, we affirm the judgment from the trial court.

## BACKGROUND

On the morning of April 22, 1997, the victim, a ninety-one year old woman, came back into her house after planting flowers in her backyard. The victim lived alone. Moments later, when the victim saw unexplained movement in her living room, she exclaimed, "Oh my Lord! I know someone is in there." The defendant, hiding inside, ran over to the victim, took a pillow off the sofa and forced it over her face and mouth. As the victim struggled, the defendant choked the victim by putting both of his hands around her neck. She pulled at his hands to free herself. The defendant pushed back with such force that the defendant broke two of the victim's fingers. The defendant, then pulled a shiny metal object out of his back pocket and hit her in the chest four to five times, knocking her to the floor. Before leaving the house, the defendant then stole money from the victim's purse and an umbrella from her closet; it was a rainy day.

Soon afterwards, the police arrived on the scene. The victim provided a statement to the police which related her description of the assailant: A young, slender black man approximately five feet nine inches tall, weighing approximately 160 pounds, wearing a striped shirt and a baseball hat.

Six months later, the defendant was picked out of a photo array by the victim. He was then indicted for two counts of especially aggravated robbery: one alleging the attack with the pillow and the other alleging the attack with the "shiny metal object." At a jury trial in Shelby County, the defendant was convicted of both counts; from these convictions, he now appeals.

## ANALYSIS

### In-Court Identification and Photo Array

Before trial, the defense counsel filed a motion seeking the suppression of the victim's in-court identification of the defendant. He argued that the victim's identification was tainted in that it was based upon an earlier unduly suggestive photo array. The trial court, however, found that the photo array was "in no way suggestive" and denied the defendant's motion to suppress. Appealing this ruling, the defendant has the burden of showing that the evidence preponderates against the trial court's ruling. See State v. Tate, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981).

The defendant's principal contention is that in the photo array only he is pictured wearing a striped shirt. He argues that this peculiarity is significant and unduly suggestive because the victim, on the scene, identified her assailant as wearing a striped shirt. To the contrary, the state argues that this peculiarity does not taint the identification. We agree with the state.

This Court recognizes that a due process violation may occur in a suggestive identification procedure even in the earliest stages of a criminal investigation. In deciding whether a violation has

occurred, the court must view the "totality of the circumstances." See Stovall v. Denno, 388 U.S. 293, 302 (1967); State v. Beal, 614 S.W.2d 77, 82 (Tenn. Crim. App. 1981). A photographic identification is admissible unless, based on the totality of the circumstances, the confrontation conducted was so unnecessarily suggestive and conducive to mistaken identification that the accused was denied due process. In Neil v. Biggers, 409 U.S. 188, 199 (1972), the court set forth a five-factor analysis for determining whether an identification tainted by suggestion may nonetheless be admitted into evidence:

      (1) the opportunity of the witness to view the criminal at the time of the crime;
      (2) the witness's degree of attention at the time of the crime;
      (3) the accuracy of the witness's prior description of the criminal;
      (4) the level of certainty demonstrated by the witness at the confrontation;
      (5) the length of time between the crime and confrontation.

See also State v. Philpott, 882 S.W. 2d 394, 400 (Tenn. Crim. App. 1994).

The photo array shown to the victim included six pictures of relatively similar individuals; accordingly, there is no argument that any "gross dissimilarity" in appearance tainted the photo array. See United States v. Wade, 388 U.S. 218, 233 (1967). However, the defendant is the only one pictured in the array wearing a striped shirt; again, the same type of shirt the victim testified to seeing.

A jury-out hearing was held on the admissibility of the victim's identification testimony. At the conclusion of the hearing, the trial court held that the testimony was admissible. In support of this conclusion, the trial court stated:

> Anyway, the photo spread that the victim in this case identified the defendant from and is Exhibit Number 22 is not suggestive. Much has been made about a striped shirt and I think that's a valid argument. However, the photograph in Exhibit 22 was made at another time, either before or after this victim's having seen him, and then we find that the striped shirt is not the one that he wore in the house. He may have a thing about wearing striped shirts. I don't know. But I can say into the record that police should not be forced or allowed to change the suspect's appearance either in the defendant's favor or in the favor of the victim.

Supporting the trial court's conclusion, the court heard the testimony of Officer Blum, who explained the procedure and established there was no coaching during the photo identification, and the testimony of the victim, who recounted her recollection of the assailant's appearance and her certainty in the identification of the defendant.

Reviewing the trial court's findings that the photo array was not suggestive and its conclusion that the testimony is admissible, we note the following facts:

(1) The victim's testimony established that she could see without her glasses;[1]
(2) Her testimony established that she had the opportunity to observe the defendant for some time;
(3) Her testimony established that she has never wavered in the identification;
(4) Officer Blum's testimony established that she showed no hesitation at the photo array;
(5) She testified that she is certain in her identification of the defendant; and
(6) Her description, while not overly detailed, corresponds accurately to the relevant characteristics of the defendant.

Therefore, in accordance with the Biggers factors,[2] we conclude that the photo array was not unduly suggestive, and that the testimony was admissible. While peculiarities may render a photo array violative of due process, in this case, the peculiarity, the striped shirt, in no way orchestrated by the police, was not unduly suggestive. Accordingly, we find no merit in this issue.

**Motion in Limine to Prohibit Certain Testimony**

The defendant next contends that it was error for the trial court to deny his motion seeking the exclusion of testimony to the effect that the defendant was "developed as a suspect." This testimony, the defendant contends, is both irrelevant and inadmissible hearsay. This Court agrees that the testimony is irrelevant and was improperly admitted. Therefore, we find error.

First this Court looks to Tenn. R. Evid. 401 and 403. Tenn. R. Evid. 401 defines relevant evidence as:
> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

But, for determining admissibility, Tenn. R. Evid. 403 continues:
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In accord with these rules, we must review the trial court's decision to admit the testimony at issue here. We review for an abuse of discretion. But first, we set forth the relevant testimony:
> Prosecutor: And, Officer Blum, Sergeant Blum, when was the first time you

---

[1] The victim's glasses were knocked off during the assault.

[2] We do note that the identification occurred six months after the robbery, but we do not find this length of time dispositive.

-4-

developed Damion –
Defense Counsel: Your Honor, can we approach the bench?
The Court: Yes, come on up.

(A bench conference was held as follows.)

Defense Counsel: Even though your Honor's ruled on it, I just want to be sure, because the Court of Appeals says you have to make your objection in addition. So, again, I just renew my motion about the terminology, "developed a suspect" from this officer testifying and I just basically it's renewal of the motion that I filed –
The Court: Right. The same ruling.
Defense Counsel: Very well, Your Honor.
The Court: Okay.

(Said bench conference was concluded.)

Prosecutor: Okay, Sergeant Blum, when or if, when did you first – when were you first able to develop Damion Carrick as a suspect?
Officer Blum: In reference to [the victim's] case it was the end of October.
Prosecutor: Okay. And once you developed him as a suspect, Sergeant Blum, how did you proceed?
Officer Blum: I took his photograph and included it in a what we call a photo spread, which is a form with a total of six pictures. His was included with five other individuals. And I met with [the victim] and showed her that photo spread.

We believe whatever probative value is present, it is outweighed by the danger of prejudicial inferences. The question and answer invite the jury to infer that there were other cases in which this defendant was a suspect or that the officer had other evidence, not admitted at trial, upon which to suspect the defendant. Either inference is impermissible and potentially prejudicial. Therefore, we find that the trial court abused its discretion and should have excluded the evidence under either Tenn. R. Evid. 401 or 403.

This finding, however, only begins our analysis. Now, we must determine whether this error warrants a new trial or whether it is harmless. This Court will not set aside the jury verdict below unless, "considering the whole record, error involving a substantial right more probably than not affected the judgment." Tenn. R. App. P. 36(b).

Two factors, discernable upon an analysis of the instant testimony and its admission, weigh in favor of finding the error harmless. First, a plain reading of the statement reveals that its actual language is rather uninteresting and facially innocuous. It is, after all, axiomatic that the defendant, Carrick, was at one time in the police investigation "developed as a suspect." Every criminal defendant was, at one time, before his trial "developed as a suspect." Second, the prosecution made

no real use of this testimony, and therefore, rather than a dominant or even reoccurring prosecution theme, the testimony, as outlined above, was before the attention of the jury for only a brief time during Officer Blum's testimony and a passing mention at closing argument.

Conversely, two factors weigh against such a determination. First, the testimony was not "blurted out by the prosecution witness," but rather, it was deliberately elicited. Second and more importantly, all the evidence against Carrick, while sufficient to support his conviction, was entirely composed of the testimony and identification by the victim. No other real proof linking Carrick to the crime was adduced.

Weighing these concerns, we cannot conclude that the error more probably than not affected the verdict. See Tenn. R. App. P. 36(b). The victim's testimony was powerful and very credible. She was tested by defense counsel, yet she remained firm and very confident of her testimony and identification. Had she wavered and this Court thought that the prejudicial implication that Carrick was a suspect in other cases played a role in the verdict, our decision would be markedly different.

**Sentencing**

The defendant raises several issues regarding sentencing; however, as we merge the defendant's two convictions, we first modify his sentence. That is, the defendant received two concurrent twenty-five year sentences; we now modify his sentence to one twenty-five year sentence.

Now, the defendant contends that this twenty-five year sentence, the maximum within the applicable range, is excessive. He argues that the trial court erred in its finding and application of certain enhancement factors as well as its consideration of certain mitigating factors. The trial court found the following enhancement factors as provided for in Tennessee Code Annotated section 40-35-114:

(1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
(4) the particular vulnerability of the victim;
(5) the defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;
(8) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
(10) the defendant had no hesitation about committing a crime when the risk to human life was high; and
(12) the defendant willfully inflicted bodily injury upon another person.

The court found no mitigating factors.

Considering and weighing these factors, the trial court ordered the maximum within the applicable range, twenty-five years. In this approach and result, the defendant claims error; specifically, he claims that:

(1) the court improperly enhanced due to "particular vulnerability;"

(2) the court improperly enhanced due to "criminal history;"

(3) the court failed to consider the defendant's potential for rehabilitation; and

(4) the court failed to properly weigh the mitigating factor of age.

This Court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. See State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. See Tenn. Code Ann. § 40-35-401(d) sentencing comm'n comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing;

(2) [t]he presentence report;

(3) [t]he principles of sentencing and arguments as to sentencing alternatives;

(4) [t]he nature and characteristics of the criminal conduct involved;

(5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in 40-35-113 and 40-35-114; and

(6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors are present, Tennessee Code Annotated section 40-35-210 provides that the presumptive sentence shall be the minimum sentence within the applicable range.[3] See State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the presumptive sentence, enhance the sentence within the range and then reduce the sentence within the range for the mitigating factors. See Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. See State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); see also Tenn. Code Ann. § 40-35-210 sentencing comm'n comments. Nevertheless, should there be no mitigating factor, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. See Tenn. Code Ann. § 40-35-210(d); Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

_____

[3] For class A felonies like the instant one, the trial court begins at the midpoint. See Tenn. Code Ann. § 40-35-210(c).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See Fletcher, 805 S.W.2d at 789.

Having reviewed the record, this Court is of the opinion that the sentence is entitled to the presumption of correctness. Turning to the defendant's arguments, we find, first, that the trial court properly enhanced the sentence due to the "particular vulnerability" of the victim. The record is clear that the elderly victim's physical frailties and weakened condition were a factor in the commission of the offense. See State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997); State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). Her small frame, advanced osteoporosis and relative weakness did not keep her from fighting back; however, in the attack, the defendant overcame her on their account. In the end, while the defendant robbed her, for a material time she was physically unable to get up after having been knocked to the floor. Compare State v. Hayes, 899 S.W.2d 175 (Tenn. Crim. App. 1995).

Second, we address the defendant's argument that the "criminal history" enhancement factor was improperly applied. See Tenn. Code Ann. § 40-35-114(1). The defendant does have a criminal history, a prior conviction for marijuana possession and a non-judicial matter involving truancy. Sentenced as a Range I offender, these offenses establish a criminal history in excess of that necessary to establish the appropriate range. Therefore, this argument is in error. Further, the defendant cites no legal authority in support of his argument to the contrary.

As regards the defendant's third argument that the trial court failed to properly consider the defendant's potential for rehabilitation, we find that the trial court did note that the defendant had previously had his probation revoked; further, as the defendant's conviction is for a Class A felony, he is not entitled to any alternative sentencing presumption. See Tenn. Code Ann. § 40-35-102(6); State v. Smith, 891 S.W.2d 922 (Tenn. Crim. App. 1994). Further, the defendant's reliance on State v. Adams, 864 S.W.2d 31 (Tenn. 1993), and State v. Melvin, 913 S.W.2d 195 (Tenn. Crim. App. 1995), is misplaced. Therefore, there is no merit in this argument.

Defendant's final argument that the trial court failed to find his age a mitigating factor is also in error. That is, while age can support mitigation, age or youth is not a per se mitigation factor. Tennessee Code Annotated section 40-35-113(6) plainly states as a mitigating factor: "The defendant, because of youth or old age, lacked substantial judgment in committing the offense." As the defendant points to nothing in the record to support any such finding of "youth" in connection with any lack of "substantial judgment," there is no proper basis for questioning the trial court's failure to apply this mitigating factor.

Therefore, this Court finds no reason to disturb the trial court's twenty-five year sentence.

Against no mitigating factors are balanced several enhancing factors. Weighing particularly strong in the judgment of this Court, and certainly the trial court's judgment as well, is the aforementioned enhancement based on the "particular vulnerability" of this victim. Over ninety years old, ailing from osteoporosis, this victim was physically attacked in her own home; first with a pillow, the defendant tried to smother her as she fought, and next with a metal object he beat her to the ground where she was in pain and hapless. And then, he robbed her. We do not disturb the sentence of the trial court.

## Plain Error

This Court generally reviews only issues presented. See Tenn. R. App. P. 13(b). However, under limited circumstances this Court may consider an issue not formally presented. See id.; see also Tenn. R. Crim. P. 52(b). Under the applicable standard, the error must constitute "plain error," affecting a "substantial right" of the accused. State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). The determinative factors as regards "plain error" are:

 (4) the record must clearly establish what occurred in the trial court;
 (5) a clear and unequivocal rule of law must have been breached;
 (6) a substantial right of the accused must have been affected;
 (7) the accused did not waive the issue for tactical reasons; and
 (8) consideration of the error is "necessary to do substantial justice."

Id. at 641-642.

After careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances of the instant crimes, we conclude that the evidence does not support two separate counts of especially aggravated robbery. We find that the two offenses plainly arise out of a single criminal episode, plainly require the same evidentiary proof, and plainly overlap factually. See State v. Alvarado, 961 S.W.2d 136 (Tenn. Crim. App. 1996); State v. Pelayo, 881 S.W.2d 7, 10 (Tenn. Crim. App. 1994); see also State v. Black, 524 S.W.2d 913 (Tenn. 1975). The two counts allege the same offense, and proving the elements of the first count inherently and necessarily establish the elements of the second. In essence, the state has proven only one offense, one especially aggravated robbery: the defendant entered the house of the victim and attacked the victim with the intent to rob. While, indeed, during the attack and robbery, the defendant used both a pillow as a deadly weapon and a "shiny metal object" as a deadly weapon, this fact does not establish the basis for finding two separate especially aggravated robberies. As such, two separate convictions are improper. See State v. Goins, 705 S.W.2d 648, 650 (Tenn. 1986). Accordingly, this Court merges the two separate convictions into one conviction.[4]

---

 [4] We note that the fact that the two sentences imposed were concurrent does not save the counts from impermissible multiplicity. See State v. Barnes, 874 S.W.2d 73 (Tenn. Crim. App.

**CONCLUSION**

Accordingly, we find that the evidence does not support conviction on two separate counts of especially aggravated robbery; we merge the two counts into one count of especially aggravated robbery and modify the defendant's sentence to one twenty-five year sentence instead of two concurrent sentences. In all other respects, we affirm the judgment from the trial court.