# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 11, 2011

## STATE OF TENNESSEE v. TONY RAY BILLINGS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-B-868     Seth Norman, Judge**

---

**No. M2010-00624-CCA-R3-CD - Filed April 14, 2011**

---

A Davidson County jury convicted the Defendant, Tony Ray Billings, of aggravated robbery, and the trial court sentenced him as a Range II, Multiple Offender to fourteen years in the Tennessee Department of Correction ("TDOC").  On appeal, the Defendant contends that: (1) the trial court erred when it allowed the State to amend the indictment; (2) the trial court committed plain error when it denied the Defendant's motion to exclude identification testimony; and (3) the evidence is insufficient to sustain his conviction.  After a thorough review of the record and applicable authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the Appellant, Tony Ray Billings.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Dan Hamm, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's taking the purse of the victim, Brandy Whitaker, whom he threatened with a knife after she chased him.  A Davidson County grand jury indicted the Defendant for aggravated robbery, and the following evidence was presented at his trial: Brandy Whitaker testified that, while she was working at a child care facility on September 19, 2007, she walked next door  to a Dollar General store to purchase something

for her lunch. On her way back from the store, she was approached by a man, whom she identified as the Defendant, who asked to use her cell phone. Whitaker denied this request, but the Defendant continued to walk beside her. Whitaker told him that she was going back to work and, feeling both scared and nervous, began walking "kind of fast" to hurry and return to work. The Defendant continued to walk beside her, saying nothing, until she got to the door of the daycare facility.

Whitaker recalled that, when she reached the daycare entrance, her grandmother came to open the door for her. Whitaker attempted to signal to her grandmother that she should not allow the Defendant to enter by giving her grandmother a "look." At this point, the Defendant grabbed Whitaker's Coach purse valued at around $450, breaking the straps, and took off running.

Whitaker testified that, acting on "instinct," she began running after the Defendant, whom she noticed was wearing a white shirt, jean shorts, and white tennis shoes. When Whitaker caught the Defendant behind the Dollar General store, he pulled out a knife with a five or six-inch blade and told her to "back up or [he would] slit her throat." Whitaker, who was about five feet from the Defendant, stood still and said nothing. The Defendant then unzipped her purse, took out $99 in cash, threw her purse behind her on the ground, and ran off again. Whitaker left her purse on the ground and chased the Defendant to the front of the Dollar General store, where several customers were located. The Defendant got into a plum colored Lexus and left the store parking lot. Whitaker collapsed from exhaustion, and a bystander who had seen her in pursuit of the Defendant began following the man in his truck.

The police arrived at the Dollar General store, where Whitaker had remained and told her that they had a suspect in custody. The police took Whitaker to a hotel where the Defendant was located, and she identified him as the person who had robbed her.

On cross-examination, Whitaker agreed the Defendant did not brandish a weapon when he first took her purse.

Detective Joe Barbill, with the Goodlettsville Police Department, testified he responded to a police dispatch of a robbery suspect driving a Lexus. The suspect had been apprehended at a motel near the robbery. Officers had apprehended the Defendant on a balcony near a room in the motel where he had been staying. After the Defendant was transported to the police station, the Defendant agreed to give a statement, and the detective interviewed him. During the course of the interview, the Defendant admitted robbing Whitaker but denied having a weapon. In the Defendant's motel room, however, police found a pocket knife. Police did not recover any money from the Defendant's room.

Alex Moore, a detective with Metro Nashville Police Department, testified that on the day of the robbery in this case, he was conducting an unrelated surveillance at the motel where the Defendant was staying. He saw the Defendant, dressed in a "grey muscle shirt" and black shorts, leave the motel driving a silver Lexus. The detective wrote down the tag number on a legal pad in his car. Detective Moore then heard a radio dispatch call about police looking for a vehicle, and the dispatch call provided the tag number. Detective Moore noted that the tag number provided was the same as the tag number he had written down on his legal pad.

Detective Moore testified that, as he was leaving the motel after hearing the dispatch call, he saw the Defendant standing in a breezeway of the motel. The detective detained the Defendant until detectives arrived.

On cross-examination, Detective Moore testified that he patted the Defendant down when he arrested him, and the Defendant was not in possession of a gun or a knife.

Based upon this evidence, the jury convicted the Defendant of one count of aggravated robbery, and the trial court sentenced him to fourteen years in the TDOC.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it allowed the State to amend the indictment; (2) the trial court committed plain error when it denied the Defendant's motion to exclude identification testimony; and (3) the evidence is insufficient to sustain his conviction.

### A. Amendment of Indictment

The Defendant contends the trial court erred when it allowed the State to amend the indictment. Acknowledging his failure to object to the amendment, he asserts his failure was "erroneous[]." The State counters that the Tennessee Rules of Criminal Procedure allow the State to amend its indictment, with or without the Defendant's consent, before jeopardy has attached, although the rules do not allow the State to add additional charges. *See* Tenn. R. Crim. P. 7(b).

The record evinces that, before the jury was sworn-in, the State informed the trial court that its indictment contained a typographical error. The indictment correctly listed the Defendant's name as "Tony Ray Billings" on the heading of the indictment but incorrectly listed his name as "Tony Ray Phillips" in the body of the indictment. The State asked to amend the indictment to correct this error. Defendant's counsel was asked if he had any objection, and he responded, "No." The trial court allowed the amendment.

An accused is constitutionally guaranteed the right to be informed of the nature and cause of the accusation. *State v. Lindsey*, 208 S.W.3d 432, 437-38 (Tenn. Crim. App. 2006) (citing U.S. Const. amend. 6, 14; Tenn. Const. art. I, § 9; *see Wyatt v. State*, 24 S.W.3d 319, 324 (Tenn. 2000)). Our courts have interpreted this constitutional mandate to require an indictment to "1) provide notice to the accused of the offense charged; 2) provide the court with an adequate ground upon which a proper judgment may be entered; and 3) provide the defendant with protection against double jeopardy." *Lindsey*, 208 S.W.2d at 438 (citing *Wyatt*, 24 S.W.3d at 324). Further, an indictment is statutorily required to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." *Id*. (citing T.C.A. § 40-13-202). An indictment need not conform to strict pleading requirements. *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997).

The Tennessee Rules of Criminal Procedure provide for an indictment to be amended. Tennessee Rule of Criminal Procedure 7(b) provides:

> (b) Amending Indictments, Presentments and Informations.
>
> > (1) With Defendant's Consent. With the defendant's consent, the court may amend an indictment, presentment, or information.
> >
> > (2) Without Defendant's Consent. Without the defendant's consent and before jeopardy attaches, the court may permit such an amendment if no additional or different offense is charged and no substantial right of the defendant is prejudiced.

The Tennessee Supreme Court continues to emphasize the relaxation of common law pleading requirements, as well as its reluctance to promote form over substance in examining the sufficiency of an indictment. *See State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000). Indictments that satisfy the requirements for adequate notice to the defendant also satisfy constitutional and statutory requirements. *Id*. Correction of an "unintentional drafting error" does not charge an additional or different offense nor prejudice a substantial right of the defendant if the indictment clearly charges the essential elements of the offense. *State v. Beal*, 614 S.W.2d 77, 80 (Tenn. Crim. App. 1981).

In the case under submission, we conclude that the trial court did not err when it allowed the State to amend the indictment. The heading of the indictment listed the Defendant's name correctly, and the body of the indictment alleged he had committed aggravated robbery. The Defendant was present at trial and prepared to answer this charge

when the State noticed that the body of the indictment listed the Defendant's first and middle name correctly but his last name incorrectly. The State orally moved to amend the indictment, the Defendant did not object, and the trial court allowed the amendment. We conclude that the trial court did not err when it allowed this "unintentional drafting error" to be corrected in that the amendment did not charge an additional or different offense or prejudice a substantial right of the Defendant. *See Beal*, 614 S.W.2d at 80.

## B. Motion to Exclude Identification Testimony

The Defendant contends the trial court committed plain error when it denied his pretrial motion to exclude the victim's identification of him shortly after his arrest. After a hearing, the trial court denied this motion. The Defendant concedes he did not renew this motion at trial and that he did not include this issue in his motion for new trial. He asks us to review this issue for plain error. The State asserts that the Defendant waived review of this issue by not filing a contemporaneous objection to this testimony at trial and by not including the issue in his motion for new trial. Further, the State posits the issue does not meet the requirements for plain error review.

The State is correct that, by failing to file a contemporaneous objection, the Defendant has waived review of this issue. Tenn. R. App. P. 36(a) (stating appellate relief is generally not available when a party is "responsible for an error" or has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error"); *see State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection). The Defendant has also waived review by not raising the issue in his motion for new trial. Tenn. R. App. P. 3(e); *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994).

We may, however, as the Defendant herein requests, consider errors affecting the substantial rights of the defendant if review is necessary to do substantial justice. Because, according to Tennessee Rule of Appellate Procedure 13(b), "[r]eview generally will extend only to those issues presented for review," we must review the issue presented by the Defendant herein pursuant to Tennessee Rule of Appellate Procedure 36(b), which states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." A court will grant relief for plain error pursuant to Rule 36(b) only when: "(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake." *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (citing *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)). If any

of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id*. The party claiming plain error has the burden of persuading the appellate court. *State v. Banks*, 271 S.W.3d 90, 119 (Tenn. 2008).

The Defendant contends the victim's testimony in which she identified him as the perpetrator breached a clear and unequivocal rule of law. In order to determine whether a clear and unequivocal rule of law was breached, we must consider the circumstances surrounding the victim's identification of the Defendant, which were presented to the trial court at the pretrial hearing on the motion to exclude her testimony. The following evidence was presented at that hearing: Whitaker, the victim, testified about the circumstances of the robbery in a manner substantially similar to her trial testimony, adding that her grandmother called 911 when Whitaker first began to chase the Defendant, who had taken her purse. Police arrived at the Dollar General store parking lot shortly after the man in the truck left, following the Lexus driven by the Defendant. Whitaker said she provided police with the Defendant's description, saying he was a white male with black and white or salt and pepper hair. She described his clothing to police, telling them the Defendant was wearing a t-shirt, jean shorts, and white tennis shoes. Whitaker was confident she would recognize the Defendant were she to see him again. She agreed she did not describe the Defendant as having any tattoos.

Shortly after police spoke with the victim, they asked the victim to accompany them to a location three minutes from the Dollar General store, where they had a suspect in custody. When Whitaker arrived with the police at the parking lot of the hotel, the Defendant was standing, handcuffed, beside a police car, with policemen standing on either side of him. Whitaker testified she immediately, from thirty feet away, recognized the Defendant as the man who had robbed her. Upon getting close to the Defendant, and examining him more closely, Whitaker became even more certain that he was the man who had robbed her. Whitaker estimated that twenty minutes elapsed between the robbery and her identification of the Defendant.

We conclude that this issue does not rise to the level of plain error for several reasons. The Defendant confessed to police that he committed this robbery, but he denied that he used a knife. The Defendant does not complain that his statement was not legally given, and this statement would be, under all circumstances, admissible against him. In the face of this confession, the victim's description of him, and the victim's subsequent identification of him, the Defendant did not challenge at trial his identity as the perpetrator of this crime. The Defendant chose, instead, to concede during the trial, most notably during closing arguments, that he robbed the victim but had not brandished a weapon during the robbery. We conclude that it is not clear whether the Defendant failed to either object to the victim's identification

-6-

at trial or raise it in his motion for new trial for tactical reasons. His trial strategy appeared to be to garner credibility by admitting the crime but deny that he used a weapon during the crime. This strategy would not logically include an objection to the victim's identification of him.

Further, in light of the weight of the evidence against him, we conclude that substantial justice does not require plain error relief. The victim was robbed at noon on a sunny day and she chased after her robber, getting a good view of his face when she caught him, and he threatened her. She chased him back to the front of a store, where she saw him leaving in a Lexus. The victim described her attacker to police. The Defendant, who drove a Lexus, was apprehended shortly thereafter near the scene of the robbery wearing clothing substantially similar to the clothing described by the victim and matching her description in other respects. The Defendant gave a statement to police admitting he robbed the victim. Considering the weight of the evidence against him, we conclude that the admission of the victim's identification does not rise to the level of plain error, regardless of whether the identification was conducted in a faulty manner. The Defendant is not entitled to relief on this issue.

### C. Sufficiency of Evidence

The Defendant next contends the evidence is insufficient to sustain his conviction for aggravated robbery because the victim's testimony standing alone was insufficient to prove that he brandished a knife during the robbery. He states that he admitted to police that he robbed the victim but denied he had a weapon. Further, he states, because the police did not find the weapon, because the victim did not mention the tattoos on his arms, and because it is "completely implausible" that the victim would have chased him had he brandished a knife, he should have only been convicted of robbery and not aggravated robbery. The State counters that the evidence supports each of the elements of aggravated robbery. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to

circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W .2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant was convicted of aggravated robbery. Aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear when "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1) (2010).

The evidence, viewed in the light most favorable to the State establishes that the Defendant approached the victim while she was returning to her place of employment after buying lunch at the Dollar Store. He followed her to the door of her place of employment and

then grabbed her purse and ran. The victim, acting out of "instinct," chased after him until she caught him. He brandished a knife and told her to stop chasing him or he would slit her throat. He then rummaged through her purse, took money, discarded the purse, and began running again. The victim again chased him toward the front of the Dollar General store, where patrons were entering and exiting the store. The Defendant got into a Lexus and drove away, followed by a man in a truck who had witnessed the victim's pursuit of the Defendant. The Defendant was apprehended a short time later, and he was not in possession of a knife. Police found a pocket knife in the Defendant's hotel room, but it did not match the victim's description of the knife.

The Defendant bases his challenges to the sufficiency of the evidence on the credibility of the victim's testimony. He asserts it is "completely implausible" that the victim would chase him after he showed her a knife and threatened to slit her throat. It is the jury's prerogative to evaluate and weigh the evidence. Any credibility issues were brought out on direct or cross-examination, and the weight and credibility of the victim's testimony is a matter entrusted exclusively to the jury. By its verdict, the jury exercised its prerogative and chose to accredit the victim's testimony. We will not disturb the jury's finding on appeal. The Defendant is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable law, we conclude the State properly amended the indictment, the issue regarding the motion to exclude the victim's identification of the Defendant does not require plain error review, and the record contains sufficient evidence to support the Defendant's conviction. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE