IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 1, 2024 Session

## STATE OF TENNESSEE v. ROGER TRINO SPENCER, JR.

**Appeal from the Circuit Court for McNairy County**
No. 4659     J. Weber McCraw, Judge
_____

### No. W2023-01008-CCA-R3-CD
_____

Defendant, Roger Trino Spencer, Jr., was indicted by the McNairy County Grand Jury for one count of aggravated robbery accomplished with a deadly weapon and two counts of aggravated assault by displaying a deadly weapon. Defendant was convicted as charged by a jury and sentenced by the trial court as a Range II offender to an effective eighteen years' confinement. The trial court also imposed an effective $15,000 fine and ordered Defendant to pay $971 in restitution. In this appeal as of right, Defendant contends that the State failed to provide sufficient proof of his identity as the perpetrator of the offenses; the State's improper comments during opening statement and closing argument entitle him to plain error relief; the trial court erred by failing to consider a validated risk and needs assessment in imposing his sentence; and the trial court erred by failing to consider his ability to pay in imposing fines and ordering restitution. Having reviewed the briefs and arguments of the parties and the record on appeal, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and MATTHEW J. WILSON, JJ., joined.

Raven Prean-Morris, Assistant Public Defender—Appellate Division, Franklin, Tennessee (on appeal); Rickey Griggs, Selmer, Tennessee (at trial), for the appellant, Roger Trino Spencer, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Mark Davidson, District Attorney General; and Lisa M. Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Trial*

On June 19, 2021, Ashley Morrison was working as a cashier at the Dollar General store in Bethel Springs when two men entered the store and robbed her. She described them as "two black males, one had a blue shirt on [and the other had a] white shirt." The man wearing a white shirt pushed the door open by pressing his hands on the glass, leaving latent fingerprints, which were later identified as belonging to Defendant. Ms. Morrison "glanced" at the men when they entered the store. They did not have any face covering when they entered and went to the back of the store. They then approached Ms. Morrison's register wearing "navy blue or a black bandana[s] over their face[s]." Both men had guns, but only the man wearing a blue shirt pulled his gun on her. The other man "flashed his shirt up kind of quick," and Ms. Morrison saw the black handle of a handgun.

When the men approached Ms. Morrison's checkout counter, they placed a tire pressure gauge on the counter. Ms. Morrison told them the price, and they demanded she give them money from the register. Ms. Morrison could not open the register because she was a new employee. She led the man in the blue shirt to the assistant manager Becky Cook's office, where he demanded Ms. Cook open the safe. Ms. Cook saw that the man was carrying a gun. She opened the safe and gave the money inside to the man in the white shirt. Ms. Cook did not know whether the man in the white shirt had a gun, but she believed he did because "[t]he other guy had a gun." The men took $971 and left the store on foot.

Store surveillance video was admitted as an exhibit and shown to the jury. Ms. Morrison identified Defendant at trial as one of the men who robbed the store, but she acknowledged that she was unable to "fully" identify him at the time of his arrest shortly after the offense. At trial, she was able to identify him "[b]y the eye feature" and "by the hair[,]" having looked back at the surveillance video.

Tyler Redman was driving an eighteen-wheeler truck southbound on Highway 45 when he saw a black four-door car parked in the emergency lane about two hundred yards past the Dollar General store. As he drove by the vehicle, two men exited the vehicle abruptly. The driver was wearing a white shirt and a bandana. Mr. Redman later recognized the men who exited the vehicle in a Facebook post by the McNairy County Sheriff's Office ("MCSO") showing still photos of the robbery taken from surveillance video. Mr. Redman testified that he was a "[h]undred percent" sure the men who got out of the vehicle were the same men shown in the photos. Police used images captured by "flock cameras" in the area to identify the vehicle, and MCSO Investigator Kevin Carter determined that the vehicle belonged to Defendant's sister, Tabreka Spencer.

The MCSO Facebook post generated several tips from the public about the robbery. Through those tips, Investigator Carter was "given a name." Investigator Carter found photos on Facebook of Defendant "wearing the same bandana on his head and sneakers as he did in the Dollar General store."

While in the McMairy County Jail, Defendant called an unidentified individual and explained how the police found him. In the phone call, Defendant "read" a statement about the proof against him. Speaking from the police officers' perspective, Defendant said, "The reason we found you was because we seen your sister's tag numbers on, on multiple cameras." Defendant continued, "They also gave us your girlfriend's address. So, when we wasn't there, that's when we found out that you is at your sister's house." The person to whom Defendant was speaking asked, "Hold on, what did they say about me? Somebody gave them my what?" Defendant responded, "They (police) say that somebody gave them my name and that after they gave them my name, they gave them your address." During the phone call, Defendant said he was "nowhere" near the crime scene.

Defendant elected not to testify and did not present any proof. The jury found Defendant guilty as charged and assessed a $10,000 fine for the aggravated robbery conviction and a $2,500 fine for each of the aggravated assault convictions.

*Sentencing Hearing*

At a sentencing hearing, the State introduced an original and an amended presentence report. The reports included the "specific data report," but neither report contained a validated risk and needs assessment. At the hearing, the following exchange occurred regarding the reports:

THE COURT: There is a pre[]sentence report. Is there any opposition to the contents of that report?

[DEFENSE COUNSEL]: No, Your Honor.

[PROSECUTOR]: No, Your Honor. It is the amended pre[]sentence report. There was a regular one and an amended one.

THE COURT: I'm looking at the regular one. The amended one is what we're going by; is that correct?

[DEFENSE COUNSEL]: Yes, Your Honor.

[PROSECUTOR]: She filed an amended one yesterday and I think just one thing changed, one of the page numbers.

THE COURT: Is there any opposition to the amended pre[]sentence report as far as lack of notice?

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: The parties waive it.

[DEFENSE COUNSEL]: Yes, Your Honor.

The State introduced certified judgments of Defendant's prior felony convictions to establish his range as a multiple offender. Defendant gave an allocution, stating that he "only ha[d] six" prior felonies and that, prior to 2015 when he "caught" "all these charges . . . in one period of time in Jackson when [he] was in college, [he] only had one prior felony from 2011." Defendant maintained that he was not someone who had an extensive criminal record. While incarcerated for the prior felonies, Defendant's goal "was to obtain the skills [he] need[ed] to be a better person, to be a great father for [his] three kids." Eleven days before his release from prison, Defendant learned that his mother passed away from Covid, and upon his release, Defendant became "very depressed" and began to abuse alcohol. Despite his depression, Defendant gained employment and was the "sole provider" for his family. Defendant asked the court for leniency in sentencing him.

The trial court considered the proof at trial and sentencing; the amended presentence report; the principles of sentencing and any arguments made as to sentencing alternatives; the nature and characteristics of the criminal conduct involved; "any other information contained within the file"; and Defendant's statement to the court. The court found Defendant was "at the top end of a Range II multiple offender."

The court found that Defendant was not eligible for consideration for an alternative sentence on the aggravated robbery conviction, but he was eligible for consideration on the two counts of aggravated assault. The court considered Defendant's physical and mental condition, as well as his social history and his allocution. The court expressed its "concern" about the circumstances of the offense, and based on Defendant's prior criminal history, the court found there was "a question about whether or not he can be reasonably rehabilitated. . . ."

The trial court sentenced Defendant to eighteen years at eighty-five percent release eligibility for his aggravated robbery conviction, and the court approved the fines set by the jury. The court sentenced Defendant to eight years at thirty percent for each of his

aggravated assault convictions and ordered the sentences to run concurrently for a total effective sentence of eighteen years. The court also ordered that Defendant pay $971 in restitution.

After the denial of his motion for new trial, Defendant appeals.

## *Analysis*

### *Sufficiency of the Evidence*

Defendant argues that the evidence was insufficient to support his convictions because the State failed to establish his identity as the perpetrator. He argues that Ms. Morrison's in-court identification of Defendant was unreliable and that the remaining evidence "was entirely circumstantial" and insufficient to prove his identity. The State responds that the evidence was sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"Identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Circumstantial evidence alone may be sufficient to establish the perpetrator's identity. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The identity of the perpetrator is a question of fact for the jury to determine. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29

S.W.3d 532, 537 (Tenn. Crim. App. 1999). "[A] jury's verdict will not be overturned unless there are inaccuracies or inconsistencies that are so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003).

Defendant does not dispute any elements of the offenses other than identity. Defendant asserts that Ms. Morrison's identification of him as the perpetrator in the white shirt was unreliable because she was unable to identify him shortly after the robbery and the circumstances of her identification of Defendant "simply preclude the possibility of a reliable positive identification." Defendant cites *State v. Beal*, 614 S.W.2d 77 (Tenn. Crim. App. 1981), and argues Ms. Morrison did not have the opportunity to view the perpetrators' faces because she only "glanced" at them when they entered the store and they were wearing masks when they approached her counter. The *Beal* factors, which are relevant to determine the admissibility of an *in-court* identification based on an improper identification procedure, *see id*. at 81-82, are inapplicable here because Defendant did not challenge the admissibility or object at trial to Ms. Morrison's identification. Rather, on appeal, he asks this Court to reweigh the credibility of Ms. Morrison's identification, which is a question for the jury.

In the light most favorable to the State, the evidence established Defendant as one of the perpetrators. Ms. Morrison "glanced" at the men when they entered the store, and they had no face covering. She stood across the checkout counter from them while they demanded money from her at gunpoint. Although both men had bandanas covering their faces, Ms. Morrison testified at trial that she identified Defendant based on his eyes and hair. Ms. Morrison acknowledged that she could not identify Defendant shortly after the offense because she had "just glanced when they walked in the door and when they came up to the register they had bandanas over their face." These circumstances do not preclude a positive identification, and any inaccuracies or inconsistencies in Ms. Morrison's identification were not so improbable to create a reasonable doubt of Defendant's guilt.

Additionally, the State presented other convincing, though circumstantial, evidence of Defendant's guilt. Mr. Redmon observed two men matching the description of the perpetrators, who exited a vehicle identified as belonging to Defendant's sister, in the vicinity of the store around the time the robbery occurred. Surveillance video showed the perpetrator in the white shirt pushed open the door to the store with his hands on the glass. Latent fingerprints were lifted from the door and matched to Defendant. Investigator Carter found images of Defendant on Facebook in which he was wearing the same bandana and sneakers as the perpetrator in the white shirt. From all of this evidence, a rational jury could have found beyond a reasonable doubt that Defendant was the perpetrator in the white shirt. Defendant is not entitled to relief on this issue.

- 6 -

*Improper Comments During Opening Statements and Closing Arguments*

Defendant contends that he is entitled to plain error relief because the prosecutor made comments during opening statements and closing arguments about facts that were not in evidence. Defendant argues that there was no proof that an anonymous tipster gave Defendant's name to the police. The State asserts that the prosecutor's opening statement and closing argument were predicated on the evidence presented at trial and that Defendant is not entitled to plain error relief.

During opening statements, the prosecutor addressed a tip received by the MCSO, stating, "the officers get another tip from the hotline identifying the white shirt robber as [D]efendant." During closing arguments, the prosecutor remarked, "And let's not forget, the officers actually got a tip from the press release that specifically identified the white shirt robber[] as [Defendant]." Defense counsel did not object to either statement.

Generally, appellate review is limited to issues properly preserved by the parties at trial. *See* Tenn. R. App. P. 13(b), 36(a), 3(e). By failing to object to the comments, Defendant is not entitled to relief on appeal unless the prosecutor's comments amount to plain error. In *State v. Adkisson*, 899 S.W.2d 626 (Tenn. Crim. App. 1994), this Court listed five factors to be applied to determine when alleged trial error constitutes "plain error":

> a) the record must clearly establish what occurred at trial; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is "necessary to do substantial justice."

*Adkisson*, 899 S.W.2d at 641-42.

In *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000), our supreme court "formally" adopted this analysis, stating that "the *Adkisson* test provides a clear and meaningful standard for considering whether a trial error rises to the level of plain error in the absence of an objection[.]" In order to be entitled to plain error relief, all five factors must be established, and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Smith*, 24 S.W.3d at 282-83. Further, "'the plain error must [have been] of such a great magnitude that it probably changed the outcome of the trial.'" *Id*. (quoting *Adkisson*, 899 S.W.2d at 642). The defendant bears the burden of persuading the appellate court that the trial court committed plain error. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

Opening statements "are intended merely to inform the trial judge and jury, in a general way, of the nature of the case and to outline, generally, the facts each party intends to prove." *State v. Reid*, 164 S.W.3d 286, 343 (Tenn. 2005). "Trial courts should allow the presentation of a summary of the facts supportive of the respective theories of the case, only so long as those facts are deemed likely to be supported by admissible evidence." *State v. Sexton*, 368 S.W.3d 371, 415 (Tenn. 2012). "Opening statements, while not evidence, must be predicated on evidence introduced during the trial of the case." *Id.*

We have consistently held that closing argument for both parties "'must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried.'" *State v. Hill*, 333 S.W.3d 106, 131 (Tenn. Crim. App. 2010) (quoting *State v. Sutton*, 562 S.W.2d 820, 823 (Tenn. 1978)). The Tennessee Supreme Court "has recognized five general areas of potential prosecutorial misconduct during closing arguments," which include "intentionally misstating the evidence or misleading the jury as to the inferences it may draw" and "arguing or referring to facts outside the record unless the facts are matters of common knowledge." *State v. Jones*, 568 S.W.3d 101, 145 (Tenn. 2019).

An appellate court should not lightly overturn a criminal conviction "solely on the basis of the prosecutor's closing argument." *State v. Banks*, 271 S.W.3d 90, 131 (Tenn. 2008) (citing *United States v. Young*, 470 U.S. 1, 11-13 (1985); *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001)). An improper closing argument constitutes reversible error only if it "is so inflammatory or improper that [it] affected the outcome of the trial to the defendant's prejudice." *Id.* (citing *State v. Thacker*, 164 S.W.3d 208, 244 (Tenn. 2005) (appendix); *State v. Cribbs*, 967 S.W.2d 773, 786 (Tenn. 1998)); *see also State v. Jackson*, 444 S.W.3d 554, 591 n.50 (Tenn. 2014). In determining whether a prosecutor's closing argument crossed the line of propriety and affected the outcome of the trial to the defendant's prejudice, courts focus upon the following five factors:

(1) the conduct complained of, viewed in light of the facts and circumstances of the case;

(2) the curative measures undertaken by the court and the prosecutor;

(3) the intent of the prosecutor in making the improper statement;

(4) the cumulative effect of the improper conduct and any other errors in the record; and

(5) the relative strength or weakness of the case.

*Jackson*, 444 S.W.3d at 591 n.50 (citing *State v. Buck*, 670 S.W.2d 600, 609 (Tenn. 1984) (adopting the five-factor analysis enunciated in *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976))).

The State argues that the proof supports the prosecutor's statements because although Investigator Carter testified only that he was "given a name" by a tipster, Defendant, in his recorded jail call, stated that the police "found" him because "somebody gave them [his] name." The State asserts, therefore, that no clear and unequivocal rule of law was breached. Defendant does not address the jail phone call in either his initial brief or his reply brief and argues simply that the prosecutor's argument was unsupported by the evidence because "Investigator Carter's testimony that his office received a 'name' does not equate to receiving a tip that named [Defendant] as the man wearing the white shirt during the robbery." We conclude that the evidence, taken as a whole, allows for the reasonable inference to be drawn that police were provided Defendant's name through an anonymous tipster. *See Banks*, 271 S.W.3d at 131 (stating that a prosecutor's closing argument "must be based on the evidence introduced at trial" and "the reasonable inferences to be drawn from the evidence[.]") (citations omitted). Defendant has not established that a clear and unequivocal rule of law was breached.

Additionally, we conclude that no substantial right of Defendant was adversely affected. The proof sufficiently established Defendant's identity as the perpetrator who wore a white shirt. Viewed in light of the facts and circumstances of the case and considering the strength of the State's case, the prosecutor's comments did not affect the outcome of the case to Defendant's prejudice. Defendant is not entitled to relief on this issue.

*Sentencing*

Regarding his sentence, Defendant challenges the length of his sentence, the fine imposed, and the trial court's order of restitution. He further asserts that this Court should remand his case for a new sentencing hearing because the presentence report did not contain a validated risk and needs assessment. The State responds that the trial court did not abuse its discretion in sentencing Defendant and that Defendant has waived his claim concerning the lack of a validated risk and needs assessment by failing to object. We agree with the State.

Appellate courts review all sentencing decisions, including the imposition of fines and restitution, under an abuse of discretion standard. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see State v. Cavin*, 671 S.W.3d 520, 528 (Tenn. 2023). This Court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out" in the Sentencing Act.

*State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008); T.C.A. §§ 40-35-101 and -102. A trial court's sentencing decision is presumed reasonable if within range and reflective of the purposes and principles of sentencing. *Bise*, 380 S.W.3d at 706; *see* T.C.A. § 40-35-210. While trial courts need not comprehensively articulate their findings with respect to sentencing, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed [on the record]." *Bise*, 380 S.W.3d at 706.

In determining a defendant's sentence, the trial court must consider evidence presented at trial and sentencing, the presentence report and the corresponding risk and needs assessment, the criminal conduct's nature and characteristics, mitigating and enhancement evidence, statistics on Tennessee's sentencing practices for similar offenses, and the defendant's statements. T.C.A. § 40-35-210(b)(1)-(2), (4)-(8). Trial courts are "free to select any sentence within the applicable range" if "consistent with the purposes and principles of [sentencing]." *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (internal quotation marks omitted).

First, we address the absence of a validated risk and needs assessment from the presentence report. Trial courts are required to order presentencing reports for defendants convicted of a felony, and the absence of this report constitutes reversible error. T.C.A. § 40-35-205(a); *State v. Rice*, 973 S.W.2d 639, 642 (Tenn. Crim. App. 1997). The presentence report "shall" include "[t]he results of the validated risk and needs assessment." T.C.A. § 40-35-207(a)(10). This assessment determines "a person's risk to reoffend and the needs that, when addressed, reduce the risk to reoffend." *Id.* §§ 40-35-207(d), 41-1-126(a). A trial courts "shall consider" this assessment "contained in the presentence report" and base the defendant's sentence on "evidence" in the assessment. *Id.* §§ 40-35-210(b)(8), -210(f). While a trial court must "consider the [assessment's] results," "the statute does not mandate that any particular weight be given to the risk and needs assessment, and the weight to be assigned to the assessment falls within the trial court's broad discretionary authority." *State v. Pace*, No. W2022-01092-CCA-R3-CD, 2023 WL 6626457, at *2 (Tenn. Crim. App. Sept. 1, 2023), *perm. app. denied* (Tenn. Apr. 11, 2024); *see Bise*, 380 S.W.3d at 708.

In *Pace*, this Court concluded that "the trial court erred in failing to consider the validated risk and needs assessment as required by Tennessee Code Annotated section 40-35-210(b)(8)." 2023 WL 6626457, at *1. However, the defendant in that case waived the issue by failing to object to the lack of a validated risk and needs assessment at the sentencing hearing. *Id.* at *2; *see also State v. Ailey*, No. E2017-02359-CCA-R3-CD, 2019 WL 3917557, at *31 (Tenn. Crim. App. Aug. 19, 2019) (citing *State v. Gilley*, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008)), *no perm. app. filed*. It is well-settled that "[t]he failure

to make a contemporaneous objection constitute[s] waiver of the issue on appeal." *Pace*, 2023 WL 6626457, at *2 (quoting *Gilley*, 297 S.W.3d at 762); *see* Tenn. R. App. P. 36(a).

In *State v. Ross*, the presentence report did not contain a validated risk and needs assessment, but the record showed that neither party "affirmatively waived consideration of the [assessment] at the sentencing hearing." No. E2023-00381-CCA-R3-CD, 2024 WL 2954404, at *6 (Tenn. Crim. App. June 12, 2024) (remanding for a new sentencing hearing where the lack of a validated risk and needs assessment was "due to [an] oversight by the court, the State, and the [d]efendant."), *no perm. app. filed*.

Here, the record shows that Defendant affirmatively waived any objection to the contents of the presentence report. The parties agreed that the amended presentence report would be considered by the trial court in sentencing Defendant, and the trial court explicitly asked if there was any opposition to the contents of the report, to which Defendant stated that he had no objection.[1] We conclude that Defendant is estopped from asserting that the lack of a validated risk and needs assessment constitutes reversible error.

Regarding the length of his sentence, the trial court imposed a within-range sentence after considering the proof at trial and sentencing, the amended presentence report, the principles of sentencing and any arguments made as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, and Defendant's statement to the court. The sentence imposed by the trial court is, therefore, presumptively reasonable.

Defendant contends that his eighteen-year sentence and $15,000 fine "was not the least severe measure necessary to achieve the purposes and principles of sentencing." Defendant relies on his statement to the court, specifically, his age, his history of employment, his role as a father and a provider, and his participation in various self-improvement programs. However, we will not reverse a trial court's sentencing decision unless it wholly departs from the Sentencing Act. The parties agreed that Defendant was a Range II multiple offender. The trial court emphasized Defendant's criminal history and determined Defendant was "at the top end" of the range. The court also expressed "concern" about the circumstances of the offense. Defendant has not demonstrated that the trial court abused its discretion by imposing an eighteen-year sentence. He is not entitled to relief on this issue.

Defendant also contends that the trial court erred by not considering his ability to pay before accepting the jury's assessment of a $15,000 fine. The State argues that Defendant has waived the issue by failing to object at sentencing and failing to raise the

---

[1] On appeal, Defendant takes issue with the presentence report being a specific data report, but this is of no consequence to our decision. *See Pace*, 2023 WL 6626457, at *2.

issue in his motion for new trial and that the trial court did not abuse its discretion. We agree with the State.

The imposition of fines is viewed as a portion of a defendant's sentence, and the standard of review is abuse of discretion. *See State v. Bryant*, 805 S.W.2d 762, 727 (Tenn. 1991); *see also Bise*, 380 S.W.3d at 707; *State v. Maples*, No. E2013-00961-CCA-R3-CD, 2014 WL 1056671, at *5 (Tenn. Crim. App. Mar. 18, 2014), *no perm. app. filed*. The amount of any fine should be based upon the principles of sentencing, including "prior offenses, potential for rehabilitation, mitigating and aggravating circumstances, and other matters relevant to an appropriate sentence." *Bryant*, 805 S.W.2d at 765-66. "A defendant's ability to pay is a factor in the establishment of fines." *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996); *see* T.C.A. § 40-35-207(a)(7) (requiring upon the trial court's request that the presentence report include information to "assist the court in imposing a fine"). "[A]lthough the defendant's ability to pay a fine is a factor, it is not necessarily a controlling one." *State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). Furthermore, "a significant fine is not automatically precluded just because it works a substantial hardship on a defendant—it may be punitive in the same fashion incarceration may be punitive." *Id*.

At the sentencing hearing, Defendant made no objection to the imposition of the fines assessed by the jury, and neither party submitted any specific proof regarding Defendant's ability to pay. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). A trial court does not abuse its discretion by imposing a fine without discussing the defendant's ability to pay when the defendant fails to raise the issue at sentencing or in a motion for new trial, and the record lacks proof about the defendant's ability to pay the fines. *State v. Jones*, No. W2016-00074-CCA-R3-CD, 2017 WL 2998900, at *8 (Tenn. Crim. App. July 14, 2017), *perm. app. denied* (Tenn. Oct. 6, 2017); *Maples*, 2014 WL 1056671, at *5.

In his reply brief, Defendant attempts to distinguish *Jones* on the basis that the defendant in *Jones* "refused to cooperate with the preparation of his presence report, providing no information about his background, including his financial resources or ability to pay." 2017 WL 2998900, at *8. However, the panel's conclusion in *Jones* did not hinge on the defendant's refusal to cooperate, but rather his failure to object at the sentencing hearing and include the issue in his motion for new trial. *Id*. Defendant also attempts to distinguish *Maples* in that the trial court in *Maples* found that there was no proof in the record regarding the defendant's ability to pay. 2014 WL 1056671, at *5. By contrast, Defendant submits that there was proof in the record of his ability to pay. As discussed below, we agree that the record here contained some evidence relative to

Defendant's potential to pay the fines, whereas in *Maples*, there was an "absence of *any proof* in the record regarding the defendant's ability to pay." *Id*. (emphasis added). This distinction, however, does not overcome Defendant's failure to object at the sentencing hearing or raise the issue in his motion for new trial. We conclude that the trial court here did not abuse its discretion. Defendant is not entitled to relief on this issue.

Finally, Defendant asserts that "the trial court's restitution order is improper because the trial court failed to set a time for payment within the duration of [Defendant]'s eighteen-year sentence and failed to consider [Defendant]'s financial resources and ability to pay restitution within the acceptable timeframe." The State asserts that the trial court's restitution order was proper.

A sentencing court may order a defendant to pay criminal restitution to the victim of the offense. T.C.A. § 40-35-304. "Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss." *Id*. § 40-35-304(b). Pecuniary loss is defined as "[a]ll special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant." *Id*. § -304(e)(1). Special damages are "'specifically claimed and proved' damages 'that are alleged to have been sustained in the circumstances of a particular wrong.'" *Cavin*, 671 S.W.3d at 529 (quoting Damages, Black's Law Dictionary (11th ed. 2019)). It is the State's burden to prove the victim's pecuniary loss. *Id*.

Once the victim's pecuniary loss is determined, the trial court must "consider the financial resources and future ability of the defendant to pay or perform" upon determining the amount of restitution. T.C.A. § 40-35-304(d) (2021). Finally, the trial court must specify the amount of restitution and the time of payment. *Id*. § -304(c). While there is no set formula regarding the appropriate amount of restitution, "the sum must be reasonable." *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). Where a trial court does not order a date for payment of restitution, the time of payment defaults to "the expiration of the defendant's sentence." *State v. Gevedon*, 671 S.W.3d 537, 539 (Tenn. 2023).

Here, the prosecutor requested that the trial court impose restitution based on the proof at trial that the defendant stole $971 from the Dollar General store. The trial court found that, based on Defendant's testimony at sentencing, he would be employable upon his release. At sentencing, Defendant stated that he had always maintained a job; that he was a full-time student and employed at the time of the offense; that he had completed career technical courses while incarcerated; and that he believed he could be a productive member of society. The trial court found that $971 restitution was "reasonable." Defendant was ordered to serve eighty-five percent of his eighteen-year sentence. It is

certainly reasonable to conclude that Defendant could complete his payment of restitution before the expiration of his sentence.  As for the time to pay the restitution, the trial court noted that Defendant was to "make payment arrangements upon release."  We conclude that the order of restitution was proper.  Defendant is not entitled to relief on this issue.

CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.


_____
TIMOTHY L. EASTER, JUDGE